**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**JAMES ELLIOT and DOROTHY ELLIOT**                    **PLAINTIFFS**

**VERSUS**                    **CIVIL ACTION NO. 2:10-CV-2-KS-MTP**

**AMADAS INDUSTRIES, INC.,
DEERE & COMPANY, and
UNIDENTIFIED ENTITIES 1 THROUGH 10**                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

The Court now addresses several motions filed by Defendants: Defendants' joint Motion to Strike Expert Testimony of Jack Sparks [44]; Defendants' joint Motion to Exclude Expert Testimony of Jack Sparks [46]; and Defendants' joint Motion for Summary Judgment [48]; Defendant Deere & Company's ("Deere") Motion for Summary Judgment [51]; Defendants' joint Motion to Exclude Certain Opinions of Lynn Esko [53].

For the reasons stated below, the Court:

1)    **grants in part** Defendants' joint Motion to Strike Expert Testimony of Jack Sparks [44];

2)    **grants** Defendants' joint Motion to Exclude the Expert Testimony of Jack Sparks [46];

3)    **grants** Defendants' joint Motion for Summary Judgement [48];

4)    **finds as moot** Defendant Deere's Motion for Summary Judgment [51]; and

5)    **finds as moot** Defendants' joint Motion to Exclude Certain Opinions of Lynn Esko [53].

## I. BACKGROUND

This product liability case arises from an accident involving a 2002 model Amadas 9900

self-propelled peanut combine. The Amadas 9900[1] functions as follows. Unearthed peanut vines are taken into the combine through the header at the front of the machine. Rotating cylinders then feed the vines into the picking chamber behind the cab. The separator mechanism is housed within the picking chamber. It is comprised of several rotating cylinders with metal teeth. When the separator is activated, these cylinders rotate at high speeds.[2] The separator removes the peanut pods from the vine and cuts the vine into small segments. The segments of vine are routed to the back of the combine by the rotating cylinders, where they are deposited on the ground. The peanut pods fall into a stemmer, which removes their stems. The harvested peanut pods are then blown up into the basket, which rests on top of the picking chamber and behind the cab.

Plaintiff James Elliot was a farm worker at M & M Farms. On September 13, 2007, he and his employer, Joe Morgan, were repairing an Amadas 9900 combine. In order to access the part which needed to be repaired, Morgan and Elliot had raised the basket. It was also necessary for them to stand inside the picking chamber, on top of the separator cylinders. After they had finished their repairs, Morgan entered the combine's cab. Elliot alleges that Morgan entered the cab to turn the engine off, as it had been idling while they made their repairs. However, Morgan alleges that he entered the cab to turn the engine on, to observe their repairs as the engine idled. Regardless, there is no dispute that Morgan entered the cab and activated the combine's separator while Elliot was standing on the cylinders. Elliot was pulled into the separator mechanism and seriously injured, resulting in the amputation of both of his legs below the knees, a full loss of vision in one eye, and

---

[1]Various photographs of the peanut combine may be found in the record at Documents 27-2, pp. 3-9; 49-2; 49-3, pp. 37-39; 49-4; 49-5; 49-10; 49-11; 49-12; and 49-13.

[2]Photographs of the exposed picking chamber may be found in the record at Document 49-5.

a partial loss of vision in the other eye, among other injuries.

Plaintiffs filed their Complaint in the Circuit Court of Forrest County, Mississippi, on September 11, 2009. Therein, they alleged both strict liability and negligence theories under the Mississippi Products Liability Act ("MPLA"). They further claimed that Defendants breached express and implied warranties. Finally, they asserted warning and design defect claims. Defendants removed the case to this Court on January 4, 2010 [1].

## II. Motion to Strike Expert Testimony of Jack Sparks [44]

### A.    *Background*

The Court entered a Case Management Order on March 4, 2010 [9], ordering that Plaintiffs were to designate their experts on or before September 2, 2010; that Defendants were to designate their experts on or before October 1, 2010; and that all discovery was to be completed by December 1, 2010. On September 2, 2010 – their designations deadline – Plaintiffs filed a Motion to Extend the Expert Designation Deadlines [25]. Therein, Plaintiffs represented that their experts required additional time to complete their investigations and prepare their reports. Plaintiffs requested that the Court extend their designations deadline to October 1, 2010, and extend the Defendants' designations deadline to November 1, 2010. However, Plaintiffs failed to disclose to the Court that their counsel had only just retained Jack W. Sparks as an expert in this matter – on the same day they requested the extension.

On September 3, 2010, the Court granted Plaintiffs' extension via text order. Plaintiffs filed their Initial Designation of Experts [27] on October 1, 2010. Plaintiffs identified Jack W. Sparks as one of their experts. They represented that he was expected to testify concerning the design, manufacture, and operating controls of the combine involved in the accident, as well as the operating

instructions and warnings given by Defendants, and they attached his "Preliminary Report" [27-2].

It is undisputed that Sparks did not inspect the combine prior to the submission of the preliminary report attached to Plaintiffs' designations. Sparks examined Plaintiffs' Complaint, Defendants' Answer, the parties' pre-discovery disclosures, Plaintiffs' discovery responses, Plaintiffs' medical records, and photographs of the combine at issue in preparing the preliminary report. Sparks additionally examined operating manuals and other documents relating to combine models other than the one involved in this case.

On November 1, 2010, Defendants filed their Designation of Experts [32]. Therein, they identified Stanley Brantley, President of Defendant Amadas Industries, Inc. ("Amadas"). Defendants asserted that they may call Brantley as an expert witness as to a variety of issues concerning the Amadas 9900 combine. Defendants also identified Charles F. Brundage as a potential expert witness in the areas of engineering, mechanical design analysis, operation, warnings and safety regarding agricultural combines and the combine involved in this case. Among other issues, Defendants expected both Brantley and Brundage to specifically address the opinions of Plaintiffs' expert, Sparks.

On November 12, 2010, Defendants filed their Emergency Motion to Compel Deposition of Jack Sparks [33]. Defendants asserted that they had e-mailed Plaintiffs' counsel on October 12 and 18, 2010, to request deposition dates for Sparks. Plaintiffs' counsel advised that Sparks was out of town until November. Defendants' counsel sent e-mails on November 3 and 9, 2010, but they received no reply. Therefore, as the discovery period was set to expire December 1, 2010, and the motions deadline was set for December 15, 2010, Defendants requested that the Court order Plaintiffs to immediately provide dates in November on which Defendants could depose Sparks.

4

The Court conducted a telephonic motion hearing for November 17, 2010. On that same day, the Court extended the discovery deadline to December 31, 2010, to allow the parties to schedule and complete depositions of designated experts [34]. The Court explicitly ordered that the discovery deadline was not extended for any other purpose. The Court also extended the motions deadline to January 14, 2010, for dispositive motions and *Daubert* motions. On November 19, 2010, Defendants noticed the deposition of Sparks for December 20, 2010 [35].

Sparks testified that he contacted Plaintiffs' counsel to arrange for an inspection of the combine within the two weeks prior to his deposition. He inspected the combine at issue on December 18, 2010 – two days prior to the deposition. He prepared a supplementary report [45-11] on December 19, 2010, and he was deposed on December 20, 2010 [45-7]. It is undisputed that Defendants did not receive Sparks' supplemental report until his deposition on December 20, 2010 – over two months after Plaintiffs' designation deadline, and almost three weeks after the discovery deadline had passed.

**B.     *Discussion***

Defendants argue that the opinions expressed in Sparks' supplemental report are untimely. Therefore, Defendants request that the Court strike his expert testimony in whole. Alternatively, they request that the Court strike the untimely portions of his testimony. Plaintiffs respond that Sparks' supplemental report is not untimely insofar as it does not contradict his preliminary report, withdraw any portion of the preliminary report, or include any opinion not previously disclosed in the preliminary report. Plaintiffs further argue that Defendants have not shown that they would be prejudiced if the Court allowed the disputed expert testimony.

The Court must first determine whether Plaintiffs complied with the Court's scheduling

orders. Then, in the event that they did not, the Court must determine whether striking Sparks'

testimony is an appropriate sanction. As always, the Court possesses broad, substantial discretion

in discovery-related matters. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546,

569 (5th Cir. 1996). Indeed, the Court has the power to control its docket "by refusing to give

ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. La. Land &

Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206,

208-09 (5th Cir. 1992)).

       1.     *The Supplemental Report's Timeliness*

The Court must first determine whether Sparks' supplemental report was timely. Rule 26

provides that "a party must disclose to the other parties the identity of any witness it may use at trial

to present" expert testimony. FED. R. CIV. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered

by the court, this disclosure must be accompanied by a written report – prepared and signed by the

witness – if the witness is one retained or specially employed to provide expert testimony in the case

. . . ." FED. R. CIV. P. 26(a)(2)(B). The report must contain the following:

     (i)     a complete statement of all opinions the witness will express and the basis
             and reasons for them;
     (ii)    the facts or date considered by the witness in forming them;
     (iii)   any exhibits that will be used to summarize or support them;
     (iv)   the witness's qualifications, including a list of all publications authored in the
             previous 10 years;
     (v)     a list of all other cases in which, during the previous 4 years, the witness
             testified as an expert at trial or deposition; and
     (vi)   a statement of the compensation to be paid for the study and testimony in the
             case.

FED. R. CIV. P. 26(a)(2)(B)(i)-(vi). "A party must make these disclosures at the times and in the

sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D).[3] Local Rule 26 provides that a "party must make full and complete disclosure as required by FED. R. CIV. P. 26(a) and L.U.Civ.R. 26(a)(2)(D) no later than the time specified in the case management order." L.U.Civ.R. 26(a)(2).

Additionally, "[t]he parties must supplement these disclosures when required under Rule 26(e)." FED. R. CIV. P. 26(a)(2)(E). "[A] party is required to supplement its expert disclosures if the court so orders or if 'the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Sierra Club*, 73 F.3d at 57 n. 42 (quoting FED. R. CIV. P. 26(e)(1)). "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2). While Rule 26(a)(3) provides that pretrial disclosures must be made at least thirty days before trial, it adds the following caveat: "[u]nless the court orders otherwise . . . ." FED. R. CIV. P. 26(a)(3). Local Rule 26 provides that a "party is under a duty to supplement disclosures at appropriate intervals under FED. R. CIV. P. 26(e) and *in no event later than the discovery deadline* established by the case management order." L.U.Civ.R. 26(a)(5) (emphasis added).

Plaintiffs argues that their supplement was timely insofar as it does not contain any opinions

---

[3]The Advisory Committee's Notes to Rule 26 of the Federal Rules of Civil Procedure provide that expert witnesses "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." FED. R. CIV. P. 26 advisory committee's note; *see also Sierra Club*, 73 F.3d at 571. "These Notes also explain that the purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club*, 73 F.3d at 571.

that were not contained in the preliminary report. Plaintiffs characterize the supplemental report as a more specific, targeted version of the preliminary report. Of course, Defendants disagree, arguing that the opinions expressed within the supplement can not fairly be characterized as within the scope of the original report. However, the Court is not required to resolve this dispute, as the supplemental report is untimely in either case.

If the supplemental report is comprised of new, previously undisclosed opinions, it was due on October 1, 2010 – Plaintiffs' designations deadline. FED. R. CIV. P. 26(a)(2)(D); L.U.Civ.R. 26(a)(2). If the supplemental report is truly a supplement, it was due by the discovery deadline. FED. R. CIV. P. 26(a)(3); L.U.Civ.R. 26(a)(5); *see also Previto v. Ryobi N. Am., Inc.*, No. 1:08–CV–177–HSO–JMR, 2010 U.S. Dist. LEXIS 133421, at *4 (S.D. Miss. Dec. 16, 2010); *Cooper Tire & Rubber Co. v. Farese*, No. 3:02–CV–SA–JAD, 2008 U.S. Dist. LEXIS 96729, at *10-*11 (N.D. Miss. Nov. 26, 2008). The discovery deadline was December 1, 2010 – as established in the Court's Case Management Order of March 4, 2010 [9]. On November 17, 2010, the Court extended the discovery deadline to allow the parties to schedule and complete depositions of designated experts [34]. The Court explicitly stated that the discovery deadline was not extended for any other purpose. Therefore, whether characterized as a new report or as a supplement, Sparks' supplemental report was untimely.[4]

2. *Appropriate Sanctions*

Defendants request that the Court strike Sparks' expert testimony in whole, or, alternatively,

---

[4]Stanley Brantley, Defendants' expert witness, was deposed on December 13, 2010, a week prior to Sparks' deposition. Plaintiffs do not argue that Sparks' supplemental report was intended to rebut Brantley's testimony. Likewise, nothing in the supplemental report suggests that it was intended as a rebuttal to Brantley's testimony.

strike the testimony contained within the supplemental opinions. Plaintiffs argue that such a harsh sanction is not merited, and that, alternatively, the Court should only strike the supplemental report and allow Sparks to testify within the scope of his timely preliminary report.

Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). When determining whether to strike an expert's testimony for a party's failure to properly and timely disclose required information, the Court considers the following factors:

(1)    the importance of the witnesses' testimony;
(2)    the prejudice to the opposing party of allowing the witnesses to testify;
(3)    the possibility of curing such prejudice by a continuance; and
(4)    the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572 (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)); *see also Reliance Ins. Co.*, 110 F.3d at 257 (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

As for the first factor, Sparks' expert testimony is undoubtedly important to Plaintiffs' case. *See Hammond v. Coleman Co., Inc.*, 61 F. Supp. 2d 533, 542 (S.D. Miss. 1999) (without expert testimony, plaintiff failed to offer proof on a matter which he bears the burden of proof at trial); *Forbes v. GMC*, 935 So. 2d 869, 877 (Miss. 2006) ("It is true that we have frequently relied on expert testimony in deciding fault in products liability cases."); *Brown v. GMC*, 4 So. 3d 400 (Miss. Ct. App. 2009) (where plaintiff failed to provide any expert testimony in support of her design and manufacturing defect claims, the trial court properly granted summary judgment in favor of the

manufacturer). Indeed, as there is no dispute as to the importance of the testimony, "so much more the reason to be sure its introduction was properly grounded." *Geiserman*, 893 F.2d at 791. "[T]he claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the judge in advance if good faith compliance was not possible." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996). "Even granting that the expert testimony was significant 'the importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.'" *Id.* (citing *Geiserman*, 893 F.2d at 792); *see also Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

With respect to the second factor, even a minor delay in complying with disclosure requirements may disrupt an opponent's preparation for trial. *See Geiserman*, 893 F.2d at 791 (a two-week delay in designating an expert witness was sufficient to disrupt the court's discovery schedule and opponent's preparation for trial). Plaintiffs argue that Defendants would not be prejudiced by introduction of Sparks' supplementary report insofar as they are already in possession of expert testimony by Brantley. Indeed, in addition to being Defendants' expert witness in this matter, Brantley is the President of Defendant Amadas Industries. However, the Court does not believe this fact to be as significant as Plaintiffs believe it is. While Defendants "might not suffer the degree of unfair surprise associated with the last-second designation of an unscheduled witness," the Court nonetheless believes there is some prejudice inherent to being forced to make late adjustments in trial preparation, and the Court has the discretion to "control discovery abuses and cure prejudice by excluding improperly designated evidence." *Id.*

To allow Plaintiffs to supplement their first report would require Defendants to prepare

supplemental expert testimony to rebut Plaintiffs' untimely testimony. *See Reliance Ins. Co.*, 110 F.3d at 257-58. The final pretrial conference in this matter is scheduled for April 14, 2011, and the trial is scheduled to begin on May 2, 2011. Allowing Plaintiffs to supplement Sparks' report at this juncture would prejudice Defendants' trial preparation and could potentially disrupt the Court's scheduling orders. *See Id.* at 257-58 (where plaintiff attempted to supplement an expert's report two months from the final pretrial conference, the district court had the discretion to deny the request to supplement); *Sierra Club*, 73 F.3d at 573 (where party who had not complied with Rule 26 provided more detailed information in a supplemental report approximately two months before trial, the delay would have likely prejudiced the opposing party).

While a continuance may cure the above-cited prejudice, it would also result in additional delay, increase the expense incurred by all parties to this lawsuit, and require the expenditure of further Court resources. *Hamburger*, 361 F.3d at 883 (citing *Geiserman*, 893 F.2d at 792); *see also Barrett*, 95 F.3d at 381. More importantly, Plaintiffs have not given the Court any reason to believe that a continuance would deter such dilatory behavior in the future. *See Barrett*, 95 F.3d at 381. Indeed, "a continuance does not in and of itself, 'deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.'" *Id.* (citing *Geiserman*, 893 F.2d at 792); *see also Sierra Club*, 73 F.3d at 573 (quoting *Bradley*, 866 F.2d at 126). Chief among the reasons that the Court believes a continuance would serve little purpose is that Plaintiffs have offered no legitimate reason for their delay. Indeed, Plaintiffs failed to offer any explanation for the supplement's untimeliness in their briefing on Defendants' Motion to Strike.

Sparks testified that his inspection of the combine was delayed by confusion as to its location, but the record reveals that Deere, in its initial disclosures of February 26, 2010, notified

Plaintiffs of its present owner's contact information. Further, the Court finds it significant that Plaintiffs filed a motion for an extension of their designations deadline on the date the designations were due, represented that their experts required additional time to complete investigations and prepare reports, while Plaintiffs' counsel first retained Sparks in this matter *on the same day* Plaintiffs requested the extension. Sparks did not even inspect the combine until December 18, 2010 – two days prior to his deposition, almost seven weeks after Plaintiffs' extended designation deadline, and almost three weeks after the discovery deadline. Sparks testified that he had to contact Plaintiffs' counsel to arrange the inspection, rather than Plaintiffs' counsel arranging for him to inspect the combine. Any potential argument by Plaintiffs that compliance with the Court's scheduling orders was impossible is belied by the above record. *See Sierra Club*, 73 F.3d at 571 n. 46, 573 (where it was known that a particular element of harm would be an issue since the action was filed, and the party had over nine months to solicit experts and prepare reports by the designations deadline, they should have produced more detailed disclosures, despite their claim that compliance was "impossible" under the circumstances).

The balance of the factors cited above favors striking the untimely disclosures. Accordingly, the Court grants in part Defendants' Motion to Strike Expert Testimony of Jack Sparks [44]. The Court will not strike all of Sparks' expert testimony, as his preliminary report was timely disclosed. Rather, the Court only strikes Sparks' supplemental report as untimely.

### III. MOTION TO EXCLUDE EXPERT TESTIMONY OF JACK SPARKS [46]

*A.*    **Daubert** *Standard*

Defendants also filed a Motion to Exclude the Expert Testimony of Jack Sparks [46]. As the Court granted Defendants' Motion to Strike Sparks' supplemental report, this motion only concerns

Sparks' preliminary report.

> Federal Rule of Evidence 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993) (quoting *United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980)). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 781 (3d Cir. 1996)). "Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992) (quoting *Gideon v. Johns-Mansville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir. 1985)).

"[W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). In *Daubert*, the Supreme Court provided a nonexclusive list of "'general observations' intended to guide a district court's evaluation of scientific evidence," including: "'whether [a theory or technique] can

13

be (and has been) tested,' whether it 'has been subjected to peer review and publication,' the 'known or potential rate of error,' and the 'existence and maintenance of standards controlling the technique's operation,' as well as 'general acceptance.'" *Id.* at 989 (quoting *Daubert*, 509 U.S. at 593-94, 113 S. Ct. 2786). The Fifth Circuit Court of Appeals has observed:

> Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience, but the district court's "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue" is no less important.

*Id.* at 990-91 (quoting *Daubert*, 509 U.S. at 592-93, 113 S. Ct. 2786).

This Court's responsibility is "to make certain than an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). While the Court must "ensure expert witnesses have employed reliable principles and methods in reaching their conclusions," it does not judge the proposed experts' conclusions. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* at 1077 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Nonetheless, "[t]he proponent of expert testimony . . . has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), and must

14

establish the admissibility requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

**B.     Discussion**

Defendants argue that Sparks' opinions are unreliable because 1) he lacks sufficient knowledge to testify as to whether his design suggestions would impair the desirability, utility, usefulness, and practicality of the combine; and 2) his reasoning and methodology do not withstand scrutiny under the *Daubert* factors.[5] In response, Plaintiffs explicitly represent that they do not intend to elicit testimony from Sparks regarding the operating effectiveness of the peanut combine.[6] Further, Plaintiffs argued that Sparks would apply generally accepted engineering principles to the combine to show that the alternative designs he proposes would have prevented the harm to Elliot. They also cite OSHA standards for agricultural equipment which require similar safeguards.

Sparks' preliminary report contains a wide variety of statements and opinions. However,

---

[5]Defendants also argue that Sparks is not qualified to offer expert testimony in this case. As the Court finds merit in Defendants' argument concerning the reliability of Sparks' testimony, it is not necessary for the Court to address his qualifications. *But see Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (expert in polymer science who had no experience in applying polymer science to tires was not qualified to provide expert testimony); *Hammond*, 61 F. Supp. 2d at 541 (where expert had no experience in manufacturing, designing, or testing lanterns; had conducted no tests on the specific lantern involved in the case or any other lanterns; and had never testified in a lantern case, his proffered testimony "probably should be excluded").

[6]Despite this representation on the second page of their response brief, Plaintiffs later argued that the alternative designs proposed by Sparks would not impair the utility, usefulness, practicality, or desirability of the peanut combine. Furthermore, Sparks – in his affidavit in support of Plaintiffs' response brief – explicitly makes the same assertion. Regardless of this incongruence, the Court finds it unlikely that Plaintiffs do not intend to elicit expert testimony from Sparks as to the feasibility, utility, usefulness, or practicality of the combine's design or his proposed alternative designs, as they are required to put on such evidence to make out a prima facie design defect claim under the MPLA. *See* MISS. CODE ANN. § 11-1-63(b), (f)(ii).

during his deposition, Sparks testified that his proposed expert testimony in this matter could be reduced to the following four opinions:

- The combine design should have incorporated a lockout mechanism on the separator activation switch. If such a mechanism were implemented, someone performing maintenance in the picking chamber would have to unlock the activation switch before the person in the cab could activate the separator.

- The combine design should have incorporated a delay and alarm, such that once the basket is raised, the separator would activate only after a three to five second delay and alarm period. This delay and alarm would not repeat after the initial separator activation, as long as the combine's engine was not cut off or the basket was not lowered. If the engine were cut off or the basket lowered, the delay and alarm would repeat before the separator could be activated again.

- There should have been written warnings inside the picking chamber advising that the separator could be activated while the basket was raised.

- There should have been written warnings in the cab advising the operator to make sure no one was in the picking chamber before activating the separator.

Sparks testified that, in his opinion, incorporation of the lockout and delay/alarm mechanisms in the combine's design would have prevented the accident at issue in this case. He further testified that, in his opinion, the written warnings he proposed could have prevented the accident.[7] After thoroughly examining Sparks' preliminary report, deposition testimony, affidavit testimony, and other record evidence, the Court finds that Plaintiffs have failed to establish the reliability of his expert testimony – a decision based on multiple factors.

First, Sparks' opinions are not based upon sufficient facts or data. He based the opinions in

---

[7]The Court will not address whether the four opinions Sparks identified as the crux of his proposed expert testimony are within the scope of his preliminary report. For the sake of addressing Defendants' *Daubert* motion, the Court will assume they were timely disclosed in the preliminary report.

his report on the following sources of information: the pleadings, discovery requests, and discovery responses in this case; Elliot's medical records; photographs of the combine at issue; operating manuals and parts catalogs for combine models not at issue in this case; a combine "Quickstart Guide;" "Service School" documents for a combine model not at issue in this case; and OSHA regulations. When asked why he had not examined documents specific to the model of combine involved in this action, Sparks testified that he did not know the specific model of combine involved in the accident when he prepared the preliminary report.

Further, at the time Sparks prepared his report, he had not inspected the combine. Indeed, during his deposition – two days after the inspection, and almost two months after the disclosure of this preliminary report – Sparks testified that he had needed to inspect the combine to confirm whether the separator's activation switch could be designed with a lockout mechanism. He further testified that he had wanted to see whether there were warnings in the cab about activating the separator when someone was in the picking chamber, and whether there were warnings within the picking chamber or underneath the basket about the potential activation of the separator while the machine was idling. Therefore, according to Sparks' own testimony, he decided that a lockout mechanism was necessary before he even knew whether it could be incorporated into the combine's design. Furthermore, he decided that additional warnings were necessary before he even knew what warnings were already on the combine at the time of the accident.

Expert witnesses "suggest an appropriate inference to be drawn from facts in evidence if the expert's specialized knowledge is helpful in understanding the facts." *United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Eng'red Materials Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

17

In the present case, Sparks had little to nothing in the way of facts when he formed his opinions. He did not have a design schematic, operator's manual, or parts catalog for the combine model at issue. He had not even personally inspected the combine. When directly asked for the factual basis of his opinion that Defendants should have foreseen an accident of this sort, Sparks replied that the only basis he had was his own experience and the fact that the accident happened. The Court does not suggest that any one of these issues is, by itself, dispositive as to the reliability of his expert testimony. However, it is clear that Sparks formed his opinions before he had sufficient facts or data.[8] *See* FED. R. EVID. 702 (expert testimony must be "based upon sufficient facts or data"); *Paz*, 555 F.3d at 388-90 (district court did not abuse discretion by excluding expert testimony based on insufficient and/or incorrect information); *Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 725-26 (5th Cir. 2009) (doctor did not rely on sufficient data concerning plaintiff's exposure to alleged carcinogen to sustain her opinions under *Daubert* or Rule 702).

Second, in a product liability case, a proposed expert must "be able to independently establish the technical basis for the utility and safety of the proposed alternative designs." *Watkins*, 121 F.3d at 993. Sparks has not provided any technical basis for his proposed alternative designs. His preliminary report contains a cursory reference to standards promulgated by OSHA and the American National Standards Institute ("ANSI"), but he failed to provide any specific citations to such standards or an explanation as to how the combine failed to comply with them. To the extent that Sparks later identified a specific OSHA standard at his deposition, the supplement was

---

[8]To the extent that Plaintiffs rely on Sparks' experience as imbuing his opinions with sufficient reliability, the Court notes that Sparks explicitly admitted that he had no previous experience with peanut combines or any agricultural combine beyond seeing them in a field from a roadway.

untimely, and the Court granted Defendants' Motion to Strike with respect to it.[9]

Furthermore, in a section of the preliminary report titled "Basis of Opinions," Sparks merely related his professional qualifications and stated, "These opinions are based upon a reasonable degree of accepted standards of engineering analysis and certainty" – without providing the alleged "standards of engineering analysis and certainty." He included no specific citations to engineering or manufacturing standards, no explanation for how the machine's design failed to comply with those standards, and no explanation for why his alternative design did comply with them.

The Court is not required to merely accept a proposed expert's assertion that his opinions derive from accepted industry standards. *See GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) ("[N]othing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Sparks admitted that he was not aware of any other agricultural equipment which utilized a lockout mechanism as he proposed. He further admitted that he has no knowledge

---

[9]Without explicitly addressing the issue, the court questions whether the OSHA regulations would even be as beneficial to Plaintiffs' case as they suggest. In *Taylor v. United Techs. Corp.*, 117 F. App'x 961, 963 (5th Cir. 2004), the Fifth Circuit held that a manufacturer "should not be expected to 'reasonably anticipate' that users of its products would fail to properly" abide by ANSI and OSHA maintenance standards. The OSHA regulation which Sparks untimely disclosed requires that employers instruct employees "in the safe operation and servicing of all covered equipment with which he is or will be involved . . . ." 29 C.F.R. § 1928.57(a)(6). Among other safe operating practices, employers are required to instruct their employees "as to all steps and procedures which are necessary to safely service or maintain the equipment." 29 C.F.R. § 1928.57(a)(6)(iii). Manufacturers have "every reason to anticipate that anyone repairing" their products will "adhere to the ANSI and OSHA guidelines and take common sense safety measures" to avoid injury. *Taylor*, 117 F. App'x at 963. Therefore, even if the Court agreed that the OSHA regulation in question set a standard which manufacturers are required to meet, it is clear that it would also create a standard of behavior which manufacturers may assume employers and employees will follow when using their products.

regarding agricultural industry standards regarding the use of such lockout mechanisms. In summary, Sparks failed to disclose any industry standards which governed the piece of machinery at issue or provided the process by which he reached his opinions, despite claiming that such standards supported his conclusions. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 277-79 (5th Cir. 1998) (it was within district court's discretion to find an "analytical gap" between expert's opinion and the data available to him in support of the opinion).

Finally, Sparks has "not tested his proposed alternative design in order to determine whether, to a reasonable probability, it 'would have . . . prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers,' as is required under Mississippi law." *Vandiver v. The Ohio River Co.*, 174 F. App'x 206, 207-08 (5th Cir. 2006). While "[t]esting is not an 'absolute prerequisite' to the admission of expert testimony on alternative designs, . . . Rule 702 demands that experts 'adhere to the same standards of intellectual rigor that are demanded in their professional work.'" *Watkins*, 121 F.3d at 990 (quoting *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996)). During his deposition, Sparks testified as to the importance of testing equipment to make sure it performed as it was designed to perform. He further testified that the effectiveness of warnings should be tested before implementation. Despite these statements supporting the testing of proposed mechanical designs, he failed to conduct his own tests before concluding that his alternative designs were superior.

Indeed, the MPLA requires that an injured party prove, by a preponderance of the evidence, that "there existed a feasible design alternative that would have to a reasonable probability prevented the harm." MISS. CODE. ANN. § 11-1-63(f). "A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness,

practicality or desirability of the product to users or consumers." MISS. CODE ANN. § 11-1-63(f)(ii). "The proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Guy*, 394 F.3d at 327 (quoting *Watkins*, 121 F.3d at 992).

Sparks testified that he had not designed, built, tested, repaired, or serviced a peanut combine or any other agricultural combine – with or without his proposed alternative safety features. He further testified that he had not written or tested any warnings for a combine, prepared any design drawings for a combine that incorporate his proposed safety features, sought out the advice of anyone with combine design experience, or conducted feasibility studies or any other research to determine the impact his alternative design would have on the utility of the combine. Additionally, none of his alternative design concepts have been published or peer-reviewed.

The Court does not suggest that any one of these issues is dispositive as to the reliability of Sparks' testimony. However, in the aggregate, they clearly indicate that there is no basis for his assurance that his proposed alternative designs and warnings would have, to a reasonable probability, prevented the injury to Elliot without impairing the utility, usefulness, practicality or desirability of the combine. *See Vandiver*, 174 F. App'x at 207-08 (proposed expert's failure to test his proposed alternative design to determine whether it would impair the utility of the product was a factor in excluding his testimony); *McSwain v. Sunrise Med., Inc.*, No. 2:08–CV–136–KS–MTP, 2010 U.S. Dist. LEXIS 7223, at *21-*22 (S.D. Miss. Jan. 14, 2010) (where proposed expert's alternative design lacked a proper foundation, his opinion as to its feasibility was excluded).

All of the issues cited above contribute to the Court's conclusion that Sparks' proposed testimony lacks the requisite indicia of reliability demanded by *Daubert*. This is not a situation where "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on

the burden of proof" can alleviate the deficiencies in proposed expert testimony. *14.38 Acres of Land*, 80 F.3d at 1078. Beyond Sparks' own assurance, Plaintiffs have failed to provide the Court with any evidence that his testimony in this matter is reliable. Accordingly, the Court grants Defendants' Motion to Exclude the Expert Testimony of Jack Sparks [46].

## IV. DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT [48]

### A.    *Summary Judgment Standard*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.'" *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004)). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138 (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable

to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138 (quoting *Daniels*, 246 F.3d at 502). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

**B.      Design Defects**

Defendants argue that Plaintiffs can not meet their burden of proof without the expert testimony of their only expert, Jack Sparks. Defendants further argue that Plaintiffs have no evidence that the combine was unreasonably dangerous, that this accident was reasonably foreseeable, or that there exists a feasible design alternative that would not impair the usefulness or utility of the combine.

Plaintiffs respond that Sparks' testimony proves that the combine was unreasonably dangerous insofar as a user could engage the separator while another person was in the picking chamber. Plaintiffs also argue that the combine lacked sufficient warnings of the danger of activating the separator while another person was in the picking chamber, and that a delay and alarm system would allow a worker to escape the chamber before the separator is engaged. Plaintiffs assert that Defendants knew of the danger and claim that Sparks designed a feasible alternative which incorporates safety features which would have prevented the accident.

To make out a design defect claim under the MPLA, a plaintiff must "prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . [t]he product was designed in a defective manner;" that "[t]he defective condition rendered the product unreasonably dangerous to the consumer;" and that "[t]he defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought."

23

MISS. CODE ANN. § 11-1-63(a)(i)-(iii). "A product is not defective in design . . . if the harm. . . was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge to the community."

MISS. CODE ANN. § 11-1-63(b). The MPLA further provides:

> [T]he manufacturer . . . shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . :
>
> (i)  The manufacturer . . . knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and
>
> (ii)  The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS. CODE ANN. § 11-1-63(f).

As the Court has excluded the testimony of Plaintiffs' proposed expert, Plaintiffs have not presented any evidence whatsoever to support their design defect claim. They have not provided any evidence that the alleged defect rendered the product unreasonably dangerous; that the alleged defect can be eliminated without substantially compromising the combine's usefulness or desirability; or that a feasible design alternative existed at the time of the accident that would have prevented the harm without impairing the utility, usefulness, practicality, or desirability of the combine. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' design

defect claim.[10]

## C.    *Warning Defects*

Defendants argue that Plaintiffs can not prove that an ordinary user of the combine would not know that the separator could be engaged while the basket was raised. Defendants also contend that the danger was open and obvious to Elliot, Morgan, and the ordinary user of such combines. Finally, Defendants argue that Plaintiffs can not prove that further warning would have prevented the accident. In response, Plaintiffs offer Sparks' testimony that further warnings would have prevented the accident.

To make out a cognizable warning defect claim under the MPLA, a plaintiff must prove by a preponderance of the evidence "that at the time the product left the control of the manufacturer . . . it failed to contain adequate warnings or instructions;" that this "defective condition rendered the product unreasonably dangerous to the consumer;" and that this "defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." MISS. CODE ANN. § 11-1-63(a)(i)-(iii). The MPLA further provides:

> In any action alleging that a product is defective because it failed to contain adequate warnings or instructions . . . , the manufacturer . . . shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . , the manufacturer . . . knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would

---

[10]*See Smith*, 495 F.3d at 228 (without excluded expert's testimony as to causation, defendant's expert was uncontroverted and grant of summary judgment was proper); *Guy*, 394 F.3d at 324 (plaintiff must present evidence of a feasible design alternative to prove that a design defect rendered a product unreasonably dangerous); *Williams v. Chrysler LLC*, 310 F. App'x 747, 747-48 (5th Cir. 2009) (district court's grant of summary judgment for lack of genuine issue of material fact was correct where it had excluded the testimony of plaintiff's experts); *Brown*, 4 So. 3d at 402 (where record was devoid of evidence in support of MPLA claim, trial court correctly granted summary judgment against plaintiff).

not realize its dangerous condition.

MISS. CODE ANN. § 11-1-63(c)(i). Also:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product . . . .

MISS. CODE ANN. § 11-1-63(c)(ii). Finally:

> [T]he manufacturer . . . shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

MISS. CODE ANN. § 11-1-63(e).

As the Court excluded the testimony of Plaintiffs' expert, they have not presented any evidence whatsoever that the combine's purported lack of warnings caused the accident. Furthermore, they have not presented any evidence that a reasonable person would have provided additional warnings, that Defendants should have known about the danger posed by the combine, or that its average user would not realize said danger. Plaintiffs have not presented any evidence to rebut Morgan's testimony that he fully appreciated the danger in starting the combine while another person stood in the picking chamber or Elliot's own testimony that he knew the separator could be engaged while the basket was raised. Finally, Defendants have presented undisputed evidence that the combine had warnings affixed at more than one location which warned users to stay clear of moving parts. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to

Plaintiffs' warning defect claim.[11]

## D.    *Remaining Claims*

The MPLA addresses breaches of express warranties, but Plaintiffs failed to address that claim in their briefing. *See* MISS. CODE ANN. § 11-1-63(a)(i)(4). In any event, Plaintiffs failed to present any evidence that Defendants made an express representation about the combine, or that they relied on such information. *See McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 848 (S.D. Miss. 2010). Therefore, there is no factual basis for a breach of express warranty claim under the MPLA, and Defendants' Motion for Summary Judgment is granted as to that claim.

Plaintiffs likewise failed to address their claims for breach of implied warranties of merchantability and fitness for a particular purpose. The MPLA did not abrogate these common law torts. *McSwain*, 689 F. Supp. at 849 (citing *Bennett v. Madakasira*, 821 So. 2d 794, 808 (Miss. 2002)). However, breaches of these implied warranties are committed by merchants – not manufacturers. *See Fed. Ins. Co. v. GE*, No. 2:08–CV–156–KS–MTP, 2009 U.S. Dist. LEXIS 112931, *38-*39 (S.D. Miss. Dec. 3, 2009) (citing MISS. CODE ANN. §§ 75-2-314(1), 75-2-315); *Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 833-34 (Miss. 2008). Therefore, they are

---

[11] *See Austin v. Will-Burt Co.*, 361 F.3d 862, 869-70 (5th Cir. 2004) (where product contained warnings which specifically addressed the adverse affect of which plaintiff complained, summary judgment was appropriate); *3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005) (where plaintiffs failed to prove that some other warning would have given them information they did not already know and that they would have acted upon that information in a manner that would have avoided injury, manufacturer was entitled to judgment as a matter of law); *Hobson v. Waggoner Eng'g, Inc.*, 878 So. 2d 68, 79 (Miss. Ct. App. 2003) (where evidence indicated that warning was sufficient and that the dangerous nature of the product was open and obvious to the user, summary judgment was appropriate); *Wolf v. Stanley Works*, 757 So. 2d 316, 322-23 (Miss. Ct. App. 2000) (where plaintiff failed to present evidence that her desired warning would have had any causative impact, summary judgment in favor of manufacturer was appropriate).

inapplicable to the present case. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' breach of implied warranty claims.

To the extent that Plaintiffs plead any further negligence claims, they are mere restatements of the MPLA claims. Therefore, the Court grants Defendants' Motion for Summary Judgment as to them also. *See McSwain*, 689 F. Supp. 2d at 844-45 (negligence claims failed because they were mere restatements of MPLA claims, which failed).

## VII. CONCLUSION

For the reasons stated above, the Court:

1)   **grants in part** Defendants' joint Motion to Strike Expert Testimony of Jack Sparks [44];

2)   **grants** Defendants' joint Motion to Exclude the Expert Testimony of Jack Sparks [46];

3)   **grants** Defendants' joint Motion for Summary Judgement [48];

4)   **finds as moot** Defendant Deere's Motion for Summary Judgment [51]; and

5)   **finds as moot** Defendants' joint Motion to Exclude Certain Opinions of Lynn Esko [53].

Accordingly, this case is closed.

**SO ORDERED AND ADJUDGED** this 1st day of March, 2011.


                                          s/Keith Starrett
                                          UNITED STATES DISTRICT JUDGE



'

28